UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GUS BROOMFIELD, III                         CIVIL ACTION

VERSUS                                      NUMBER: 14-2434

CAROLYN W. COLVIN, ACTING                   SECTION: "G"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION


## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based upon disability.  (Rec. doc. 10, 11).

Gus Broomfield, III, Plaintiff herein, filed the subject applications for DIB and SSI benefits on September 1, 2010, with a protective filing date of August 25, 2010, alleging disability as of October 21, 2009.  (Tr. pp. 213-219, 220-223, 282).[1/]  In a "Disability Report-Adult" form that appears in the administrative record below, the conditions resulting in Plaintiff's inability to work were identified as a back injury, knee pain, leg problems, high blood pressure, headaches, arthritis, obesity, and heart issues.  (Tr. p. 287).  Plaintiff's

---

[1/] A review of the administrative record reveals that Plaintiff had previously filed at least six applications for Social Security benefits, five of which were denied at the initial level of the Commissioner's administrative review process and the sixth of which, an application for DIB, was denied at the hearing level on January 17, 2010.  (Tr. pp. 282-283).  As respects Plaintiff's current application for DIB, principles of *res judicata* preclude the Court from considering his entitlement to such benefits prior to the date of that most recent adverse adjudication, *Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S.Ct. 980, 985-86 (1977), and Plaintiff bore the burden of proving that he became disabled prior to the expiration of his insured status on September 30, 2010. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

applications for Social Security benefits were denied at the initial level of the Commissioner's administrative review process on October 12, 2010.  (Tr. pp. 120-123, 124-127).  Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on July 14, 2011, at which Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. pp. 128-129, 29-53).  On August 5, 2011, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. pp. 100-113).  Upon review of that decision by the Appeals Council ("AC"), on June 4, 2012, that tribunal remanded the matter to the ALJ for resolution of various issues.  (Tr. pp. 114-117).

Subsequent to the remand, the ALJ held a second hearing on March 21, 2013, at which Plaintiff, who was still represented by counsel, and a VE appeared and testified.  (Tr. pp. 54-79).  On May 8, 2013, the ALJ issued a second written decision in which he again concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. pp. 6-28).  The AC subsequently denied Plaintiff's request for review of the ALJ's decision on August 21, 2014, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. pp. 1-4).  It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

> A.    Gus Broomfield lacks the residual functional capacity to do light work.
>
> B.    Mr. Broomfield's testimony was credible.
>
> (Rec. doc. 10-1, pp. 2, 7).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

1.  The claimant met the insured status requirements of the Social Security Act through September 30, 2010.

2.  The claimant has not engaged in substantial gainful activity since October 21, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: osteoarthritis, bilateral carpal tunnel syndrome, peripheral neuropathy of his lower extremities, bursitis, morbid obesity, chronic knee pain bilaterally with minimal degenerative joint disease [of the] right knee, chronic low back pain, morbid obesity, hypertension, bilateral pes planus, gout and sleep apnea (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he cannot climb ladders, ropes or scaffolds, can only occasionally climb ramps or stairs and stair climbing is limited to no more than 10 percent of the day and should not involve more than one flight of stairs at a time.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on November 16, 1964 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy and that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2009, through the date of this decision (20 CFR 404.1520)g) and 416.920(g)).

(Tr. pp. 12, 13, 21, 22, 23).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries:  (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1970). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may

not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that

of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the

evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d

590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled

within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir.

1988). Disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which…has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the

Commissioner then bears the burden of establishing that the claimant is capable of

performing substantial gainful activity and is, therefore, not disabled. *Harrell*, 862 F.2d at

475. In making this determination, the Commissioner uses the five-step sequential analysis

set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. an individual who does not have a "severe impairment" will not be found to be disabled;

3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4. if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made;

5. if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). If the analysis reaches the fifth step, the ALJ may establish that other work is available that the claimant can perform by relying on expert vocational testimony or other similar evidence to establish that such jobs exist. *Fraga*, 810 F.2d at 1304 (citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985)). Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fraga*, 810 F.2d at 1302.

Because the issues raised by Plaintiff in her cross-motion are fairly limited in scope and were addressed and argued by the parties without a full discussion of the voluminous evidence that was admitted in the administrative proceedings below, the Court will follow that lead and do likewise. Plaintiff's first challenge to the Commissioner's decision is that the ALJ erred in finding that he retained the residual functional capacity ("RFC") to perform light work. In support of that claim, Plaintiff first argues that the ALJ, despite finding at step two of the §§404.1520/416.920 analysis that he suffered from and had been diagnosed with various medical conditions, nevertheless found that he retained the RFC to perform light work. However, the mere existence or diagnosis of a condition and its attendant symptomology does not equate with a finding of disability under the Social Security Act. *Randall v. Astrue*, 570 F.3d 651, 658-59 (5th Cir. 2009). Rather, the appropriate inquiry is

6

whether a claimant's impairments result in functional limitations that render him unable to perform his past work or any other work. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

Plaintiff next argues that the ALJ, in making his RFC assessment, accorded "much weight" to the consultative examination findings of Dr. Brett Rothaermel, a specialist in the field of Physical Medicine and Rehabilitation/Occupational Medicine, who had reviewed several previous medical reports that had been provided to him but failed to consider the results of an electromyogram ("EMG") and nerve conduction studies ("NCS") that were performed on November 1, 2010. Plaintiff argues that the results of those tests were "quite significant," with a resulting diagnosis of bilateral carpal tunnel syndrome and sensorimotor peripheral neuropathy of the lower extremity. Once again, the mere fact that a claimant has been diagnosed as suffering from a medical condition does not, in and of itself, compel the conclusion that he is disabled. *Randall*, 570 F.3d at 658-59. The Court also notes that Plaintiff failed to identify carpal tunnel syndrome as a disabling condition in his applications for Social Security benefits and related paperwork. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). The payment authorization that the SSA provided to the doctor listed the eight conditions that had been identified by Plaintiff in his Disability Report. (Tr. pp. 433, 287). Admittedly, the EMG/NCS report of November 1, 2010 is not listed among the medical records that were identified as having been provided to the doctor in connection with his consultative evaluation of October 12, 2012. (Tr. p. 437). While the Regulations provide that the SSA "will ... give the examiner any necessary background information about your condition," 20 C.F.R. §§404.1517, 416.971, the Court is cited to no authority that mandates that the totality of a claimant's previous medical records be provided to the consultative

evaluator beforehand.   In any event, Plaintiff was not precluded from submitting the EMG/NCS report himself to Dr. Rothaermel in advance of the consultative evaluation.

At the evaluation, Plaintiff identified his major complaint as that of knee pain and the "history of present illness" portion of the doctor's report focuses exclusively on that condition.  (Tr. p. 434).  Nevertheless, Dr. Rothaermel did acknowledge that Plaintiff's past medical history was significant for carpal tunnel syndrome as well as Plaintiff's report that he wore braces for that condition.   (Tr. p. 435).   Upon physical examination, Plaintiff exhibited 5/5 strength throughout in both the upper and lower extremities with normal muscle bulk and tone and he retained a "… normal ability to reach, push, pull, grasp, and perform fine and gross motor movements" with light touch and pinprick sensation intact and 2+ reflexes in the upper extremities.  (Tr. p. 436).  In light of those benign findings, carpal tunnel syndrome was not included in the doctor's diagnoses and no limitations resulting from that condition were noted.   Consideration of the EMG/NCS report would not have changed Dr. Rothaermel's conclusions.

Next, Plaintiff complains that Dr. Rothaermel "erroneously" found that he had no restrictions on his ability to lift and carry during an eight-hour workday; that he had certain limitations with respect to standing, walking, and sitting; and, that he had unrestricted use of his hands.  Plaintiff argues that "[t]his type of conclusory opinion illustrates that all of Mr. Broomfield's medical conditions were not considered when this evaluation was completed." (Rec. doc. 10-1, p. 4).  Once again, the proper inquiry is not whether a claimant suffers from medical conditions but whether those conditions result in limitations that preclude him from performing any work.  *Trenary*, 898 F.2d at 1364.  As a cursory review of Dr. Rothaermel's consultative report readily reveals, the doctor did indeed diagnose Plaintiff as suffering from

seven separate conditions.  (Tr. p. 437).  However, in light of the fact that a physical examination "... revealed limited musculoskeletal findings which would preclude this patient from performing work related activities," opinions on Plaintiff's limitations were rendered by the doctor accordingly.  There was nothing erroneous or conclusory about those fact-based opinions.

Plaintiff additionally faults Dr. Rothaermel for the manner in which he completed the "Medical Source Statement" form that is appended to his consultative report, arguing that the doctor failed to consider his body weight in opining on his physical limitations despite the explicit instructions on the form which direct that "[a]ge and body habitus of the individual <u>should</u> <u>not</u> be considered in the assessment of limitations."  (Tr. p. 439)(emphasis added).  If he had, how the doctor could be chided for following the specific instructions on the form is not apparent.  What Plaintiff overlooks, however, are the doctor's handwritten annotations on the form indicating that Plaintiff could never climb ladders or scaffolds as a result of "safety concerns due to body weight;" that his assessment of Plaintiff's ability to engage in postural activities was guided by his "[b]ody habitus, deconditioning;" that Plaintiff could not work at unprotected heights due to "safety [concerns];" and, that the doctor's environmental limitation assessment was shaped by Plaintiff's "[b]ody habitus, deconditioning."  (Tr. pp. 442-443).  The "Range of Motion Chart" that was completed by Dr. Rothaermel in connection with his consultative evaluation also contains additional handwritten comments of "self limited range of motion" and "[l]imited due to body habitus."  (Tr. p. 445).  In the consultative report itself, Dr. Rothaermel noted Plaintiff's self-report of weighing 467 pounds, observed him to be "morbidly obese," and specifically diagnosed him with obesity.  (Tr. pp. 435, 437).  As was accurately noted by the ALJ (Tr. p. 21), contrary to

Plaintiff's present assertion, the doctor did indeed consider Plaintiff's weight in rendering his opinions.

Under the rubric of his first claim, Plaintiff additionally argues that the findings made by Dr. Rothaermel were at odds with other medical documentation and the testimony that Plaintiff gave at the administrative hearing.  According to Plaintiff, "[a] significant piece of evidence that <u>was</u> <u>not</u> considered by the ALJ in his decision was a functional capacity evaluation conducted by Mr. Donald Kinnard, PT."  (Rec. doc. 10-1, p. 5)(emphasis added). On that score, at the conclusion of his explanation for making the RFC assessment that he did, the ALJ in his written decision stated as follows:

> The claimant's representative submitted a functional capacity evaluation report completed by Donald P. Kinnard, a physical therapist, in which he opined that the claimant is limited to sedentary work and can only work 4 hours during the course of an 8-hour work day (Exhibit 12F).  <u>Mr. Kinnard is not an acceptable medical source and his opinion is not entitled to any evidentiary weight, but it was considered</u> (20 CFR 404.1513).  It is noted also that claimant saw this individual on but a single occasion which, coincidentally, was in the same week as the hearing.

(Tr. p. 21)(emphasis added).

As correctly noted by the ALJ, physical therapists like Mr. Kinnard are not among the "acceptable medical sources" recognized by the Social Security Regulations.  20 C.F.R. §§404.1513(d)(1), 416.913(d)(1).  Nevertheless, Mr. Kinnard's opinions were in fact considered by the ALJ.  And as the ALJ observed, the timing of the functional capacity evaluation in relation to the administrative hearing (a mere one day) casts doubt on its probative value.  *Harrell*, 862 F.2d at 482.  As for the weight that the ALJ accorded to Plaintiff's administrative hearing testimony, that issue will be discussed more fully below in connection with the Court's resolution of his second challenge to the Commissioner's

decision.   For present purposes, the Court simply notes that a claimant's subjective complaints must be supported by the objective evidence of record.   *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *Augustine v. Barnhart*, No. 01-CV-2685, 2002 WL 927797 at *4 (E.D. La. May 7, 2002); *Collins v. Callahan*, No. 96-CV-3546, 1998 WL 118082 at *3-4 (E.D. La. March 17, 1998).   A claimant's statements, standing alone, are insufficient to establish the existence of an impairment.   20 C.F.R. §§404.1528(a), 416.928(a).   After considering the body of evidence before him, both subjective and objective, the ALJ discharged his regulatory duty of making an assessment of Plaintiff's RFC.   20 C.F.R. §§404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c).   The arguments advanced by Plaintiff here do not undermine that RFC determination.

Plaintiff's second challenge to the Commissioner's decision is that the ALJ erred in failing to properly evaluate his credibility based primarily on perceived inconsistencies between the testimony that he gave at the two administrative hearings that were held in his case.

The law is clear that an ALJ must consider a claimant's subjective complaints of pain and other limitations.   *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981).   However, it is within the ALJ's discretion to determine their debilitating nature.   *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).   The burden is upon the plaintiff to produce objective medical evidence of a condition that could reasonably be expected to produce the level of pain or other symptoms complained of.   *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).   The ALJ must then weigh the plaintiff's subjective testimony against the objective medical evidence that has been produced.   *Chaparro*, 815 F.2d at 1010 (citing *Jones*, 702 F.2d at 621 n. 4).   An ALJ may discredit a plaintiff's subjective

complaints of pain and other limitations if he carefully weighs the objective evidence and articulates his reasons for doing so. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989)(citing *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988)). It must be remembered that the evaluation of a plaintiff's subjective complaints is a task particularly within the province of the ALJ, for it was the ALJ who had an opportunity to observe the plaintiff, not the reviewing court. *Harrell*, 862 F.2d at 480. In the final analysis, the responsibility of weighing the evidence and determining the credibility of witnesses' testimony and doctors' opinions lies with the ALJ in the first instance. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991); *Greigo v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

Pursuant to 20 C.F.R. §404.1529(c)(1), 416.929(c)(1), and Social Security Ruling ("SSR") 96-7p, in assessing a claimant's credibility, an ALJ must first determine whether the objective medical evidence shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms complained of, such as pain. SSR 96-7p, 1996 WL 374186 at *2; *Herrera v. Comm. of Soc. Sec.*, 406 Fed.Appx. 899, 905 (5th Cir. 2010). If so, the ALJ must then evaluate the intensity and persistence of the symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. *Id*. If the claimant's symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence of record, including any statements by the claimant concerning his symptoms, and then make a finding on the credibility of the claimant's statements relative to the symptoms and their functional effects. *Herrera*, 406 Fed.Appx. at 905. While an ALJ must consider subjective evidence relating to pain and other symptomology, it is within his discretion to determine their disabling nature.

*Id.* (quoting *Wren*, 925 F.2d at 128).  "Although an ALJ 'is bound . . . to explain his [or her] reasons for rejecting a claimant's complaints of pain,' he is not required to 'follow formalistic rules in his articulation.'"  *Id.* (quoting *Falco*, 27 F.3d at 164).  It is not sufficient for an ALJ to make a single conclusory statement that the individual's allegations have been considered, that the allegations are or are not credible, or to simply recite the factors that are described in the Regulations for evaluating symptoms; rather, the ALJ's decision must contain specific reasons for the finding on credibility, supported by evidence of record, that are sufficiently specific to make clear the weight that the ALJ gave to the claimant's subjective complaints and the reasons therefor.  SSR 96-7p, 1996 WL 374186 at *2.

A review of the ALJ's written decision readily reveals that he properly weighed Plaintiff's hearing testimony and subjective complaints against the objective evidence of record in arriving at his RFC to work, specifically citing 20 C.F.R. §§404.1529, 416.929, and SSR 96-7p as well as the two-step analysis discussed above.  (Tr. pp. 13-14).  After discussing the medical evidence of record, including that set forth in his first written decision which was incorporated in his second decision by reference, the ALJ summarized Plaintiff's hearing testimony before providing a number of reasons why he did not find Plaintiff's statements to be entirely credible.  (Tr. pp. 14-21).  Those reasons included the testimonial "variances" cited by Plaintiff in his second challenge in terms of the significance of the alleged disability onset date, fluctuations in his weight, and his ability to put on his shoes and socks.  (Tr. pp. 19-20).  In addition, however, the ALJ found that Plaintiff's testimony about the worsening of his condition was inconsistent as respects his ability to drive and the necessity and duration that he elevate his legs daily.  (*Id.*).  Further inconsistencies were noted in terms physical therapy for Plaintiff's knee and the need for an assistive device to ambulate.  (*Id.*).

Significantly, the ALJ also observed that Plaintiff had received unemployment benefits in the fourth quarter of 2009 and that he continued to receive such benefits in 2010 and 2011, "… a position that [wa]s untenable in light of his simultaneous assertion that he [wa]s disabled and unable to work."  (Tr. p. 20).   While not dispositive, applications for unemployment benefits and disability benefits are inherently inconsistent and incompatible as there is no reasonable explanation for how a person seeking disability benefits under the guise of being unable to work can simultaneously seek unemployment benefits claiming that he is ready and able to work. *Redwine v. Astrue*, No. 12-CV-2296, 2013 WL 3070850 at *13 (E.D. La. June 17, 2013); *Jones v. Astrue*, No. 11-CV-2288, 2013 WL 1136854 at *16 (E.D. La. Feb. 25, 2013), *adopted*, 2013 WL 1130438 (E.D. La. March 18, 2013)(citing *Jones v. Chater*, 68 F.3d 467 (5th Cir. 1995)(table)).   Also diminishing Plaintiff's credibility and the veracity of his subjective complaints were the findings of one of his treating physicians, Dr. Mary Mathai of the Physical Medicine & Rehabilitation Department at the Leonard Chabert Medical Center, which were reportedly negative and the consultative findings of Dr. Rothaermel discussed above which were given "great weight."  (Tr. pp. 20-21).  Supported as it was with a thoughtful explication of the evidence, caselaw directs that the ALJ's credibility determination be deferred to in the first instance.  *Harrell*, 862 F.2d at 480.

### **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14

days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79

F.3d 1415 (5th Cir. 1996)(en banc). [2]

      New Orleans, Louisiana, this <u>28th</u> day of <u>    December    </u>, 2015.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[2] *Douglass* referenced the previously-applicable 10-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.